UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:23-cv-60012-SINGHAL

KEVIN MURRAY,

      Plaintiff,

v.

LEARJET INC.,
      a Foreign for Profit Corporation,

      Defendant.

_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(WITH INCORPORATED MEMORANDUM OF LAW)**

Defendant Learjet Inc. ("Learjet" or "Defendant"), pursuant to Fed. R. Civ. P. 56, S.D. Fla. L.R. 56.1, hereby moves for summary judgment on all of Plaintiff's claims.

## INTRODUCTION & SUMMARY OF ARGUMENT

This is a nine-count action by Plaintiff Kevin Murray ("Plaintiff" or "Murray") alleging unlawful employment discrimination due to race (Black) (Counts I-III), hostile work environment and constructive discharge due to race (Black) (Counts IV-VI), and retaliation (Counts VII-IX) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Counts I, IV, VII), 42 U.S.C. §§ 2000e *et seq*., the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") (Counts III, VI, IX), and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. §§ 760.10 *et seq*. (Counts II, V, VIII).[1]

As discussed more fully below, Learjet is entitled to summary judgment on all of Murray's claims.  First and foremost, the majority of events on which Plaintiff bases his claims date as far back as 2002 – well outside of Section 1981's four-year statute of limitations, which has the longest statute of limitation among the three statutes on which Plaintiff bases this action. Moreover, Plaintiff released all race discrimination claims based on allegedly discriminatory pay practices as part of Learjet's conciliation and settlement of claims with the Department of Labor Office of Federal Contract Compliance Programs ("DOL OFCCP").  In light of that, Murray's race discrimination and retaliation claims fail because he cannot establish a *prima facie* case that Learjet took an adverse employment action against him because of his race or retaliated against him for engaging in a protected activity.  Likewise, with regard to the hostile work environment and constructive discharge claims, Plaintiff fails to come even close to stating a *prima facie* case of unlawful hostile environment race harassment.

## SUMMARY OF UNDISPUTED MATERIAL FACTS[2]

1.    *Plaintiff's Employment with Defendant.*

---

[1]  Plaintiff asserts three identical claims – race discrimination, hostile work environment/constructive discharge, and retaliation – under three separate statutes – Title VII, Section 1981, and FCRA.

[2]  Learjet provides this summary as a convenience to the Court. It is a distillation of the undisputed material facts contained in Learjet's separate *Statement of Undisputed Material Facts In Support of Its Motion for Summary Judgment*, which Learjet is filing simultaneously pursuant to S.D. Fla. L.R. 56.1. Learjet's *Statement of Undisputed Material Facts* contains citations to the Record and an appendix of pertinent Record exhibits. References to "SMF" in this Memorandum are to the separately numbered paragraphs of the Statement of Undisputed Material Facts.

Learjet designs, manufactures, sells, and services Learjet business aircraft (SMF ¶ 1).  It also provides aftermarket support for Challenger and Global aircraft manufactured by Bombardier Inc. (SMF ¶ 1).  Learjet formerly operated an aircraft Florida Service Center at the Fort Lauderdale Airport (SMF ¶ 2).  Defendant first hired Plaintiff in 2002 as an A&P Tech at Learjet's Florida Service Center (SMF ¶ 6).

Throughout his 19-year tenure at Learjet, Plaintiff never received a write-up for under-performance or making a mistake, never received a negative evaluation from his supervisor, and received many performance recognitions from management (SMF ¶¶ 9-12).  Plaintiff also never applied for any other position within the Company (SMF ¶ 13).  Moreover, during his nearly two-decade long employment at Learjet, Murray never witnessed or heard anyone refer to him by a racist term, call him a racist name, or use a racist slur around him (SMF ¶ 18).

Due to the COVID-19 pandemic, Learjet had no choice but to furlough a large number of its employees across the United States, including the Florida Service Center (SMF ¶¶ 89-90).  Plaintiff volunteered to be placed on furlough starting on May 18, 2020 (SMF ¶ 91).  When Learjet management asked Plaintiff to return to work from furlough in January 2021, Murray voluntarily retired from employment with Defendant (SMF ¶¶ 92-95).

    2.    _Plaintiff's Proffered Incidents of Race Discrimination and Race Harassment._

Sometime in 2017, one of Plaintiff's supervisors assigned Plaintiff a difficult and stressful task of an engine change on a Global Express aircraft (SMF ¶ 20).  Plaintiff testified that he felt the management assigned him that task because no one else wanted to do it and because Plaintiff was "very good at what he did" and took "it very seriously" (SMF ¶ 21).

Sometime before 2018, another supervisor assigned Plaintiff yet another stressful and difficult task of fixing a brake problem on an airplane at the Miami Airport for an important customer (SMF ¶¶ 22-23).  Once again, Plaintiff opined that the management selected him because he was very good at his job (SMF ¶ 24).

On another occasion – Plaintiff does not recall the approximate year – supervisor Efrain Villafane asked Plaintiff to fix a rudder damper problem on an airplane (SMF ¶¶ 26-27).  Villafane complimented Murray that Villafane came to him with this task because he was told that Murray was the one to see if he needed "to get this job done" (SMF ¶ 25).

When asked to provide examples of "race harassment," Plaintiff testified that it was "his belief" that, when he started working for Defendant, "one of the many jobs [he] got was [fixing]

fuel tanks and toilets," which was a "dirty job" (SMF ¶¶ 28-29).  Plaintiff admitted, however, that he could not name a single non-Black comparator who management did not require to work on fuel tanks or toilets (SMF ¶ 34).

As another form of "race harassment," Plaintiff testified that – he does not recall the year but it "could have been in 2018" – it constituted harassment when management sent two Caucasian A&P Techs to undergo VFG (vibration frequency generator) testing in Montreal (SMF ¶ 35).  Then, despite sending two White A&P Techs to training, the management assigned Plaintiff the task of conducting VFG testing (SMF ¶ 36).  Yet, Plaintiff admitted that he does not believe that management decided to assign him VFG testing tasks because of his race (SMF ¶ 40).

In another example of "race harassment" proffered by Plaintiff, Plaintiff assisted another Technician, Majio Al Saeed, in fixing entry doors to a Bombardier Challenger 300 aircraft (SMF ¶ 41).  After Plaintiff fixed the entry door issue, everyone, including management, admired how well the door worked (SMF ¶ 42).  However, nobody said "good job" to Plaintiff and, instead, the facility took credit for fixing the door (SMF ¶ 42).  Once again, Plaintiff admitted he does not feel that the management decided not congratulate him because of his race (SMF ¶ 43).

Plaintiff also testified that, "possibly" in 2018, the management tasked him and another Black A&P Tech, Roy Hamilton, to remove two engines from an airplane (SMF ¶ 44).  Murray and Hamilton timely performed the engine removal and placed both engines on holding stands (SMF ¶ 45).  The following day, Murray observed his Operations Manager Jim Heasley questioning the manner by which Murray and Hamilton placed the engines on the holding stands (SMF ¶ 46).  According to Plaintiff, instead of acknowledging the great work he and Hamilton did, the management questioned it and did not "recognize" his efforts (SMF ¶ 46).  Plaintiff does not feel that the management initially questioned Plaintiff's work and refused to acknowledge his efforts because of his race (SMF ¶ 47).

As another example of "race harassment," Plaintiff testified that a Lead A&P Tech from another shift, Dave Leadley, who was not Plaintiff's direct supervisor, said to him, "what are you correcting me now?  Go work on my fucking airplane" after Murray approached him and asked him about a missing entry in the service order (SMF ¶ 49).  Plaintiff testified that he felt Leadley reacted rudely to his question because Murray is Black and it is Plaintiff's "personal opinion" that Leadley is racist (SMF ¶ 50).  When asked for facts to support his assertion, Plaintiff

3

testified that "from his point of view" if he approaches someone "in a civilized manner" and, in response, someone reacts to him "in a very condescending way," to Plaintiff "that's racist, plain and simple" (SMF ¶ 51). Plaintiff proffered no other facts to support his assertion that Leadley reacted to him in a rude manner because of his race (SMF ¶ 52).

Other than: (a) the incident from 2017 when a supervisor assigned him the difficult task of an engine change; (b) being assigned a difficult task of fixing a brake problem at the Miami Airport; (c) Villafane assigning him a task of fixing a rudder damper problem; (d) being assigned work on fuel tanks and toilets; (e) being assigned to conduct VFG testing despite other A&P Techs receiving training on it in Montreal; (f) having to fix doors on an aircraft and management not recognizing his achievement; (g) having to remove two engines from an airplane in 2018 and management not recognizing his efforts; and (h) his one-time run-in with Leadley who used the F-word when responding to Plaintiff, Murray admitted he could not proffer any other examples of race harassment or race discrimination from the time he was employed at Learjet (SMF ¶ 54).

3.    *Plaintiff's Proffered Instances of Retaliation.*

In early 2018, Plaintiff approached his Operations Manager Jim Heasley and told him that he had been working at the facility for a "long time," that he is "a minority," and that he felt he wasn't compensated enough (SMF ¶ 70). Heasley responded to Plaintiff that he would look into it but also stated to Murray that he was "probably making more than [he] should" (SMF ¶ 71). During his deposition, Plaintiff testified that he felt that the company retaliated against him after he complained to Heasley when Lead Avionics Tech Jamie Pelchat increased his workload and when Lead A&P Tech Ramon Rios "tried to fire him" (SMF ¶ 74).

Plaintiff believes Pelchat sent him additional work because she knew Murray would do the job (SMF ¶ 75). Plaintiff has no facts to support his assertion that Pelchat started to assign him more work in retaliation for him raising the pay issue with Heasley (SMF ¶ 76).

With regard to Rios, Plaintiff testified Rios reported him to Heasley, accused him making certain mistakes on a work order, and demanded for Murray to be terminated (SMF ¶ 78). After Chief Inspector Julio Alonzo reviewed Murray's work order, he determined that it was a minor issue (SMF ¶ 79). Management did not discipline Plaintiff (SMF ¶ 11). When asked for facts to support his assertion that Rios "tried to fire him" in retaliation for Murray raising the pay issue with Heasley, Plaintiff proffered none and merely opined that Rios should have raised the issue directly with Plaintiff instead of complaining to management (SMF ¶ 81).

4.     *Learjet's Conciliation Agreement and Settlement with DOL OFCCP; and Release of Claims by the Plaintiff.*

In September 2019, following an audit by the DOL OFCCP at the Defendant's Fort Lauderdale Florida Service Center, Learjet entered into a conciliation agreement with the DOL OFCCP (SMF ¶ 84).  As part of the conciliation process, Murray and other minority A&P Techs received notice about the Conciliation Agreement and were given the opportunity to opt-into a settlement related to the alleged unequal pay practices (SMF ¶ 85).

On or about October 16, 2019, Plaintiff tendered a signed release of claims related to his compensation in exchange for payment of $4,612.86 (SMF ¶ 86).  Plaintiff's Release of Claims Under Executive Order 11246 states in section I as follows:

> I hereby waive, release and forever discharge Learjet Inc., its predecessors, successors, related entities, parents, subsidiaries, affiliates and organizations, and its and their shareholders, directors, officers, employees, agents, successors, and assigns, of and from any and all actions, causes of action, damages, liabilities, and claims arising out of or actionable under Executive Order 11246, as amended, which I or my representatives (heirs, executors, administrators, or assigns) have or may have which related in any way to my compensation as a Technician on the basis of my race/ethnicity at any time prior to the date of my signature of this Release.

(SMF ¶ 87).  The conciliation agreement expressly stated that Learjet denied violating any laws in connection with the settlement (**Exhibits 1-1** and **1-2** to SMF).

## LEGAL STANDARD

### A.     **Summary Judgment Standard.**

Summary judgment is mandated if there is no genuine issue of material fact to be tried, and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment is clearly appropriate in employment-discrimination cases. *Wilson v. B/E Aerospace Inc.*, 376 F.3d 1079, 1084 (11th Cir. 2004) (rejecting contention that summary judgment is disfavored in employment discrimination cases).  The moving party has the initial responsibility of informing the court of the basis for its motion and the evidence of record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323. The moving party may obtain summary judgment simply by establishing that there is an absence of evidence to support any element of the non-moving party's case where the non-moving party bears the burden of proof at trial.  *Id*. at 324-25.

Once the moving party satisfies its burden, the nonmoving party, to survive summary judgment, must designate specific record evidence sufficient to establish the existence of a genuine issue for trial as to each element of his claim. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Although all reasonable inferences are to be drawn in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the opposing party may not rest upon its pleading allegations but must instead set forth "specific facts showing there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 325; *Matsushita*, 475 U.S. at 587.

A fact is "material" only if, under the applicable substantive law, it would affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). A factual dispute is "genuine" only if the record, taken as a whole, would lead a rational trier of fact to find for the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *Matsushita*, 475 U.S. at 587. As such, a factual dispute is not "genuine" if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or "not significantly probative." *Liberty Lobby*, 477 U.S. at 249-50. The evidence must be of sufficient weight or quality to support a jury verdict for the nonmoving party. *Id.* at 248, 257; *Hickson Corp.*, 357 F.3d at 1260.

**B.      The Applicable Statutes of Limitations.**

*(i)      Section 1981*

The statute of limitations for a claim under Section 1981 is four years. *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1338-39 (11th Cir. 2008). This limitations period begins to run when an adverse employment decision is made and communicated to the employee. *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258-59 (1980) (limitations period began when the employer informed the employee of a negative employment decision).

Here, Murray first asserted his Section 1981 claims against Defendant when he filed his Complaint on September 5, 2022 in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. *See* **Exhibit A** for a file-stamped copy of Plaintiff's original Complaint filed in Florida Circuit Court. Thus, in order for Plaintiff's Section 1981 not to be time-barred, the adverse employment action Plaintiff bases his claim on must have occurred on or after September 6, 2018.

*(ii)     Title VII*

6

"As a prerequisite to filing suit under Title VII, a plaintiff must file a timely charge of discrimination with the EEOC." *Stuart v. Jefferson Cty. Dep't of Human Res.*, 152 F. App'x 798, 800 (11th Cir. 2005). In a deferral state, like Florida, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the date of the alleged discrimination. 42 U.S.C. § 2000e-5(e)(1); *EEOC v. Joe's Stone Crab, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). Only those claims arising within 300 days prior to the filing of the charge of discrimination are actionable. *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). Untimely claims are barred. *Id.* Plaintiff filed his charge of discrimination with the EEOC on November 18, 2021. *See* **Exhibit B** for a copy of Plaintiff's EEOC Charge of Discrimination. Accordingly, in order to be timely under Title VII, the alleged discrete discriminatory act must have occurred on or after January 22, 2021.

(iii)   *FCRA*

Under the FCRA, a plaintiff must file an administrative charge within 365 days of the alleged violation. *City of W. Palm Beach v. McCray*, 91 So. 3d 165, 172 (Fla. 4th DCA 2012) (quoting Fla. Stat. § 760.11(1)). Claims not timely filed are time-barred. *Clarke v. Winn-Dixie Stores, Inc.*, No. 06-61886-CIV, 2007 WL 3011018, at *3 (S.D. Fla. Oct. 12, 2017). As noted above, Plaintiff filed his Charge of Discrimination on November 18, 2021. As a result, in order to be timely under FCRA, the alleged discrete discriminatory act must have occurred on or after November 19, 2020.

(iv)   *The Continuing Violation Doctrine*

The continuing violation doctrine offers an exception to the limitations period and allows a plaintiff to sue on otherwise time-barred claims where at least one violation occurred within the period. *See Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1221 (11th Cir. 2001). "In determining whether a discriminatory employment practice constitutes a continuing violation, '[the court]' must distinguish between the present consequences of one-time violation, which does not extend the limitations period, and the continuation of the violation into present, which does." *Joe's Stone Crab*, 296 F.3d at 1271. "[A] plaintiff may not circumvent the limitations period merely by labeling an act a 'continuing' violation. Completed acts such as termination … are not acts of a 'continuing' nature. Rather, a plaintiff must maintain that a pattern of discrimination or an employment practice presently exists to perpetuate the alleged wrong." *Wolf v. MWH Constructors, Inc.*, 34 F. Supp. 3d 1213, 1222 (M.D. Fla 2014) (citations and

quotation omitted).  Importantly, the continuing violation doctrine "does not apply to discrete acts of discrimination, such as a promotion denial or refusal to hire."  *Brooks v. CSX Transp., Inc.*, 555 F. App'x 878, 880 (11th Cir. 2014).

## ARGUMENT

The allegations of Plaintiff's First Amended Complaint span almost two decades from 2002 until 2021. Plaintiff asserts in conclusory fashion that during the entirety of this nearly twenty-year period, he allegedly "endured a continuous pattern of hostile and abusive conduct by Learjet, on account of his race."  *See* First Amended Complaint ("FAC") ¶ 19 [D.E. 36]. Plaintiff's deposition testimony mirrored his complaint.  He testified to the alleged discriminatory acts without being able to provide even the approximate year in which they happened.  *See generally* SMF.  Accordingly, Learjet will separately analyze Plaintiff's claims as follows: (1) Murray's release of claims based on pay discrimination in the DOL OFCCP settlement; (2) race discrimination claims (Counts I-III); (3) retaliation claims (Counts VII-IX); and (4) hostile work environment/constructive discharge claims (Counts IV-VI).

### A.    Plaintiff Released his Claims Based on Pay Discrimination.

Both the First Amended Complaint and Plaintiff's deposition testimony vaguely assert that Learjet compensated Murray less than non-black similarly situated employees.  *See* FAC ¶; SMF ¶ 58.  In addition to being unable to proffer any comparators via admissible evidence, Plaintiff cannot use the alleged race-based pay disparity to support any of his claims because he released those claims in the DOL OFCCP settlement.

It is undisputed that, on October 16, 2019, Plaintiff executed a document entitled Release of Claims Under Executive Order 11246 ("the Release") (SMF ¶ 86).[3]  The Release expressly states that it "is a legal document" and that in exchange for Learjet paying Murray money, he would agree "not file any lawsuit against Learjet Inc. for allegedly violating Executive Order 11246 in its compensation of employees in Technician positions."  *See* **Exhibit 1-2** to SMF. Moreover, the Release goes on to state that Plaintiff waived, released, and discharged Learjet "of and from any and *all actions*, *causes of actions*, *damages*, *liabilities* and *claims arising out of* or

---

[3] Signed by President Lyndon B. Johnson in 1965, Executive Order 11246 established requirements for non-discriminatory practices in hiring and employment by U.S. government contractors. The Order provides the DOL the power to investigate non-compliance and pursue criminal and civil proceedings against a contractor. *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 70 (D.D.C. 2002).

actionable under Executive Order 11246" which relate "in any way to [Plaintiff's] compensation as a Technician on the basis of [his] race." *Id.* (emphasis added).

Plaintiff's release clearly encompasses his Title VII, FCRA, and Section 1981 claims to the extent those claims are based on Learjet's alleged discriminatory pay practices as those claims arise out of and were actionable under Executive Order 11246. Importantly, there is no private cause of action for an employer's violation of Executive Order 11246. *See, e.g.*, *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 70 (D.D.C. 2002) (dismissing plaintiff's claim under Executive Order 11246 after concluding that it "is devoid of a provision that provides for a private cause of action against a non-complying contractor."); *see also Cohen v. Il. Inst. of Tech.*, 524 F.2d 818, 822 n.4 (7th Cir. 1975) (plaintiff had no cause of action for sex discrimination under Executive Order 11246). Thus, if one were to interpret the Release as not to include race discrimination claims under Title VII, FCRA, or Section 1981, it would render the release meaningless – not releasing anything since there is no private cause of action under the Executive Order 11246. Accordingly, the Release bars Plaintiff from asserting pre-October 16, 2019 pay discrimination claims under Section 1981, Title VII, and the FCRA.

**B.    Learjet is Entitled to Summary Judgment on Plaintiff's Race Discrimination Claims (Counts I-III).**

Learjet is entitled to summary judgment on Murray's race (Black) discrimination claims because Plaintiff cannot establish a *prima facie* case.

A claim of unlawful employment discrimination may be established through direct or circumstantial evidence. *Kragor v. Takeda Pharma. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012). This is not a "direct evidence" case because there is no evidence directly linking any Learjet employment decision regarding Plaintiff within the applicable statute of limitations with his race. Direct evidence is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption." *Wilson,* 376 F.3d at 1086 (citation omitted). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of" some impermissible factor constitute direct evidence of discrimination. *Id.* "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." *Id.* Here, during his deposition, Plaintiff did not identify a single statement that could serve as direct evidence of race discrimination by Learjet decision-makers (SMF ¶¶ 15, 17-18). As such, this is not a direct-evidence case.

9

Circumstantial disparate-treatment claims, like those at issue in this case, are analyzed under the now-familiar framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under that framework, if the employee presents evidence sufficient to prove each *prima facie* element, the employer then has the burden of articulating a non-discriminatory reason for its action.  This burden is one of production only and is "exceedingly light."  *Cooper v. Southern Co.*, 390 F.3d 695, 724-25 (11th Cir. 2004).  If the employer presents such evidence, any presumption of discrimination "drops from the case."  *Reeves v. Sanderson Plumbing Prods. Inc.*, 120 S. Ct. 2097, 2106 (2000).  At that point, the employee must, to survive summary judgment, present evidence sufficient to allow a jury to conclude that the employer's explanation is merely a "pretext" for discrimination.  *Reeves*, 120 S. Ct. at 2106; *Cooper*, 390 F.3d at 725.

In order to establish a *prima facie* case of race discrimination with circumstantial evidence, the plaintiff must show: (1) he is a member of the protected class; (2) he was subject to an adverse employment action; (3) his employer treated similarly situated employees who were not members of his class more favorably; and (4) he was qualified for the job or benefit at issue. *Gillis v. Ga. Dep't of Corr.*, 400 F.3d 883, 887 (11th Cir. 2005).  In the Eleventh Circuit, a plaintiff must demonstrate that he and his proffered comparators are "similarly situated in all material respects."  *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 2018 (11th Cir. 2019).  "[A] valid comparison will turn not on formal labels, but rather on substantive likeness."  *Id*.  And "a plaintiff and his comparators must be sufficiently similar, in an objective sense, that they cannot reasonably be distinguished."  *Id*. at 1228.

(i)       *Title VII and FCRA Race Discrimination Claims (Counts I-II)*

Plaintiff fails to establish the second prong of a *prima facie* race discrimination claim.  Indeed, Murray cannot point to any adverse employment action that Learjet took against him on or after January 22, 2021 (Title VII) or on or after November 19, 2020 (FCRA).  It is undisputed that Murray volunteered to be placed on furlough triggered by the COVID-19 pandemic on May 18, 2020 (SMF ¶ 91).  It is undisputed that Defendant's management asked Murray to return to work from furlough in January 2021 after the workload at the Florida Service Center started to increase (SMF ¶ 93).  It is also undisputed that, on January 20, 2021, Plaintiff informed management that he wished to retire from employment at Learjet instead of returning to work (SMF ¶ 95).

Learjet is therefore entitled to summary judgment on Counts I and II of the FAC, the Title VII and FCRA race discrimination claims, because Plaintiff has failed to state a *prima facie* case. *See Celotex Corp.*, 477 U.S. at 324-25 (moving party may obtain summary judgment simply by establishing that there is an absence of evidence to support an element of the non-moving party's case where the non-moving party bears the burden of proof at trial).

(ii)     *Section 1981 Race Discrimination Claim (Count III)*

Similarly, Plaintiff's race discrimination fails even if he is permitted to extend his statute of limitations to September 2018 in an effort to establish a *prima facie* case under Section 1981. It is undisputed that Learjet never disciplined Plaintiff in any way (SMF ¶¶ 9, 11) or issued him a negative performance evaluation (SMF ¶ 10). It is undisputed that Plaintiff never applied for any other position within the company (SMF ¶ 13). Indeed, the opposite is true. Plaintiff admitted he received many awards from management for outstanding performance (SMF ¶ 12). Plaintiff also admitted that he stopped working for Learjet in January 2021 after he *asked to retire* from the company (SMF ¶¶ 7, 93-95).

In a desperate attempt to establish the second prong of a *prima facie* discrimination case, Plaintiff during his deposition, identified as potential adverse employment actions the following: being assigned difficult tasks such as changing an engine on an airplane in 2017 (SMF ¶¶ 20-21); fixing a brake problem on an airplane which occurred "before 2018" (SMF ¶¶ 22-24); fixing a rudder damper at an unknown date (SMF ¶¶ 25-27); being given undesirable assignments of having to fix fuel tanks and toilets (SMF ¶¶ 28-34); being assigned to conduct VFG testing despite other A&P Techs receiving training on it in Montreal (SMF ¶¶ 35-40); and not being recognized by his management after finishing difficult assignments such as engine changes or fixing doors on an aircraft (SMF ¶¶ 41-47).

First and foremost, to the extent the events occurred prior to September 2018 – conducting an engine change in 2017 (SMF ¶ 20) or fixing a brake problem "before 2018" (SMF ¶ 23) – these events fall well outside of the statute of limitations under Section 1981. Likewise, to the extent Plaintiff cannot give the approximate year a given incident happened – fixing a rudder damper (Plaintiff does not know the year (SMF ¶ 27)) or having to fix fuel tanks and toilets (Plaintiff does not remember the last time he worked on a fuel tank but it was "sooner" than ten years ago (SMF ¶ 30)) – Murray cannot establish that these alleged adverse employment actions occurred within Section 1981's four-year statute of limitations. *See, e.g., Barrett v.*

*Whirlpool, Corp.*, 704 F. Supp. 2d 746, 751-54 (M.D. Tenn. 2010) (granting summary judgment in favor of defendant on a sexual harassment claim based on a one-year statute of limitations where plaintiff filed her complaint on August 29, 2008 but could only recall that the last alleged harassing behavior happened "a little while later" than spring 2007 because "no reasonable jury could reasonably conclude that the last allegedly harassing act was as late as August 30, 2007."); *Hernandez v. AT&T Servs., Inc.*, No. 6:14-cv-1487-Orl-22TBS, 2017 WL 5197504, at \*9 (M.D. Fla. Feb. 27, 2017) ("Because Plaintiff cannot recall the dates that most of these [racially harassing] incidents occurred, they are likely barred by the limitations period.").

Second, the asserted actions – being assigned more challenging or undesirable tasks than his peers or not being recognized by his management for performing work – even if true, do not constitute "adverse employment actions" to satisfy the second element of a *prima facie* case. Indeed, while an employer's conduct short of an ultimate employment decision – such as termination or demotion – may be actionable as an adverse action, it must reach a "threshold level of substantiality." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998). Moreover, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances, regardless of the employee's subjective view of the adversity of the employment action." *Alford v. Fla.*, 390 F. Supp. 2d 1236, 1248 (S.D. Fla. 2005) (internal quotations and citations omitted).

Plaintiff cannot show how Learjet's alleged assignment of difficult or undesirable tasks or failure by management to recognize his achievements led to a decrease in his salary, changes in his work hours, or other material harm. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 & 1245 (11th Cir. 2001) (holding that loss of prestige due to a job transfer does not constitute an adverse employment action because "to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment") (emphasis in original); *Gloetzner v. Lynch*, 225 F. Supp. 3d 1329, 1352 (N.D. Fla. 2016) (finding no adverse employment action where "Defendant's nonselection of Plaintiff for two trainings did not impact his job title, salary, or benefits in any ways. Plaintiff has failed to establish that Defendant's denial of training had any tangible harm or impact on his employment."); *see also Grimsley v. Marshalls of MA, Inc.*, 284 F. App'x 604, 609 (11th Cir. 2008) (employee did not suffer adverse employment action when supervisor denied him breaks despite allowing employees outside of protected class to take

breaks); *Worthy v. Materials Processing, Inc.*, 433 F. App'x 374, 375 (6th Cir. 2011) (denial of bathroom break, causing employee with a medical condition to soil herself, was not an adverse employment action).  As such, Plaintiff's allegations that Learjet discriminated against him because of his race when it gave him difficult or undesirable assignments or did not praise him for performing challenging work fall short of establishing the second prong of a *prima facie* case of discrimination.

Third, even if one were to assume that any of the incidents Murray described constituted an adverse employment action, Plaintiff cannot establish the third prong of a *prima facie* case: showing that Defendant treated similarly situated employees who were not members of his protected class more favorably.  Indeed, with regard to Plaintiff's assertion that management unfairly assigned him to work on fuel tanks and toilets, Murray admitted during his deposition that he could not name a single non-Black A&P Tech who his supervisors did not require to work on fuel tanks or toilets (SMF ¶ 32).

Most tellingly, however, even if Plaintiff could establish a *prima facie* case of race discrimination – which he cannot – Murray admitted during his deposition that he believed the management assigned him challenging tasks not because of his race but because he was a very good A&P Tech, took his work "very seriously," and would always "get the job done" (SMF ¶¶ 21, 24-25).  Moreover, with regard to being assigned to conduct VFG testing or the management's failure to congratulate him after performing certain tasks, Plaintiff admitted that he did not feel that his Black race had anything to do with those decisions (SMF ¶¶ 40, 47).

Consequently, Learjet is entitled to summary judgment on Plaintiff's Section 1981 race discrimination claim (Count III).

**C.      Learjet is Entitled to Summary Judgment on Plaintiff's Retaliation Claims (Counts VII-IX).**

As with the race discrimination claims addressed above, Defendant is entitled to summary judgment on all three retaliation claims because Murray cannot establish a *prima facie* case that Learjet subjected him to a retaliatory adverse employment action.

Retaliation claims are analyzed under the *McDonnell Douglas* framework.  To establish a *prima facie* case of unlawful retaliation, a plaintiff must show (1) he engaged in statutorily "protected conduct," (2) he suffered an adverse employment action, and (3) a causal link between the conduct and the action. *Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1328 (11th

Cir. 1998); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). If the plaintiff establishes a *prima facie* case, summary judgment is still mandated unless the plaintiff offers evidence showing the employer's non-retaliatory explanation for the adverse employment action is a pretext for discrimination. *Stewart*, 117 F.3d at 1287-88.

The protected activity Plaintiff identified during his deposition for which he felt management retaliated against him occurred in "early 2018" when Murray approached Heasley and expressed his concern that he was not adequately compensated as "a minority" (SMF ¶ 70).[4] Heasley responded to Plaintiff that he would look into his concerns but also stated to Murray that he was "probably making more than [he] should" (SMF ¶ 71). According to Plaintiff, Learjet retaliated against him when Lead Avionics Tech Jamie Pelchat increased his workload and when Lead A&P Tech Ramon Rios "tried to fire him" "not too long" after his conversation with Heasley (SMF ¶¶ 74, 80).

### (i)    *Title VII and FCRA Retaliation Claims (Counts VII and VIII)*

Murray's Title VII and FCRA retaliation claims fail as a matter of law as time-barred because he cannot show that Learjet subjected him to an adverse employment on or after November 19, 2020. Notwithstanding, even if Murray were to show that Defendant subjected him to an adverse employment action within Title VII's or FCRA's statute of limitation periods, Plaintiff would also not be able to establish the third element of a *prima facie* case of retaliation because the nearly three-year period between his protected activity "in early 2018" and the adverse employment action in late 2020 would be too long to establish a "causal link" between the two. Accordingly, Learjet is entitled to summary judgment on Murray's Title VII and FCRA retaliation claims (Count VII and VIII).

### (ii)    *Section 1981 Retaliation Claim (Counts IX)*

Similarly, with regard to a Section 1981 retaliation claim, the claim is also time-barred and, even if it was not, Plaintiff cannot establish both the second and third prongs of a *prima facie* case – i.e., that Learjet subjected Plaintiff to an adverse employment action and that there is

---

[4] During his deposition, Plaintiff testified that he engaged in two other protected activities. Specifically, sometime prior to 2010, Plaintiff complained to Zaidman that another A&P Tech, Alan Skidmore, "harassed" a dark-complexion Hispanic A&P Tech Nestor De Leon (SMF ¶¶ 55-56, 58, 61, 63). On another occasion, Plaintiff does not recall the year, Murray confronted his Shift Supervisor Time Freeman and called him "a snake" after Freeman allegedly "harassed" him (SMF ¶¶ 65-67). However, as to both instances, Plaintiff admitted that Learjet did not retaliate against him for engaging in those two protected activities (SMF ¶¶ 64, 69).

a causal link between his protected activity (complaint to Heasley) and Pelchat's decision to increase his workload.

Plaintiff admitted that he communicated with Heasley "in early 2018" and the alleged retaliatory conduct by Rios occurred "not too long" after his conversation with Heasley (SMF ¶¶ 70, 80).  As such, no reasonable jury could conclude that both the protected activity and the alleged retaliatory conduct by Rios occurred on or after September 6, 2018.

Likewise, even if true – both the increased workload by Pelchat and Rios's actions of reporting Plaintiff to management in an attempt "to fire him" – did not constitute an adverse employment action to satisfy the second prong of a *prima facie* case of retaliation because they did not represent a *serious and material* change in the terms, conditions, or privileges of employment.  *Davis*, 245 F.3d at 1239 & 1245; *see also Kostic v. United Parcel Service, Inc.*, 532 F. Supp. 3d 513, 535 (M.D. Tenn. 2021) ("The Court agrees that the alleged over-supervision and difficult workloads are not adverse employment actions for purposes of Plaintiff's discrimination claims."); *Walden v. Patient-Centered Outcomes Research Inst.*, 304 F. Supp. 3d 123, 136 (D.D.C. 2018) ("Walden's claim that her workload was increased does not constitute an adverse employment action.").  Moreover, Plaintiff admitted that management quickly dismissed Rios's complaint against Plaintiff as a minor issue and never disciplined him for it (SMF ¶¶ 11, 79).

To establish a causal connection, the Plaintiff must provide evidence that: (1) the decision-makers responsible for the adverse actions were *aware* of the protected activity; and (2) *the adverse acts were at least somewhat related* and in close temporal proximity to the protected activity.  *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (emphasis added).  It is undisputed that Plaintiff has no evidence to show that either Pelchat or Rios were aware of his conversation with Heasley (SMF ¶¶ 77, 82).

Plaintiff also cannot proffer any evidence suggesting that Pelchat's or Rios's actions were somewhat related to his protected activity.  Neither served as Plaintiff's supervisor and there is no evidence showing that Murray's complaint to Heasley motivated their alleged retaliatory behavior (SMF ¶¶ 76, 81).  To the contrary, Plaintiff opined that Pelchat sent him additional work because she knew he would do the job (SMF ¶ 75).

As such, Murray cannot establish a *prima facie* case of a Section 1981 retaliation, his claim fails as a matter of law, and Learjet is entitled to summary judgment on his Section 1981 retaliation claim (Count IX).

**D.     Learjet is Entitled to Summary Judgment on Plaintiff's Hostile Work Environment/Constructive Discharge Claims (Counts IV-VI).**

To establish his hostile work environment claims under Title VII, the FCRA or Section 1981, Murray must show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome racial harassment; (3) that the harassment was based on his race; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatorily abusive working environment; and (5) that Learjet is responsible for such environment. *Adams v. Austal, USA, LLC*, 754 F.3d 1240, 1248–49 (11th Cir. 2014).

*(i)     Title VII and FCRA Hostile Work Environment/Constructive Discharge Claims (Counts IV and V)*

Plaintiff cannot point to a single act that occurred on or after November 19, 2020 that could be rationally interpreted as a racially "hostile" environment under controlling law, which requires evidence of an environment "permeated with discriminatory intimidation, ridicule, and insult." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998).

The only post-November, 2020 events that took place here were Learjet's recall of Murray from furlough and Plaintiff's request to retire from the company.  There is no evidence that these two events were even remotely related to Plaintiff's race.  As such, they cannot be used to support his hostile environment claim.

Murray also cannot use evidence of pre-November 2020 conduct to save his Title VII and FCRA claims under the continuing violation doctrine.  Under the continuing violation exception, otherwise time-barred claims are actionable if they are part of a pattern or continuing practice of discrimination which extends into the statutory filing period.  *Roberts v. Gadsden Mem. Hosp.*, 835 F.2d 793, 800 (11th Cir. 1998).  The Eleventh Circuit cautioned, however, that "[t]he continuing violation doctrine does not exist to give a second chance to an employee who allowed a legitimate Title VII claim to lapse.  It is only when a substantial nexus exists between a timely-filed claim and an otherwise time-barred claim that they may be viewed as constituting a single violation . . . ."  *Id.*  Here, there is no nexus, much less a substantial one, between the Plaintiff's

time-barred allegations under Title VII and FCRA of being assigned difficult or undesirable tasks, not receiving recognition from management for the work he completed, or his one-time verbal altercation with Lead A&P Tech Dave Leadley, and management's decision to recall Plaintiff from furlough or Plaintiff's decision to retire from Learjet.   Consequently, the continuing violation theory cannot be used to make timely Plaintiff's Title VII and FCRA hostile work environment or constructive discharge claims.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's Title VII and FCRA hostile work environment/constructive discharge claims (Counts IV and V).

(ii)    *Section 1981 Hostile Work Environment/Constructive Discharge Claim (Count VI)*

Plaintiff testified to the following "racially hostile acts" that occurred on or after September 6, 2018: (1) one of his supervisors, Efrain Villafane, asked him to fix a rudder damper problem on an airplane because someone told him that Murray is the person to go to if he needed "to get this job done" (SMF ¶¶ 25-26); (2) being assigned undesirable work on fuel tanks and toilets (SMF ¶¶ 28-34); (3) management sending two White A&P Techs to undergo VFG testing in Canada yet assigning Plaintiff the task of conducting VFG testing (SMF ¶¶ 35-40); (4) management not praising or acknowledging Plaintiff when he fixed an entry door on an airplane and removed engines from an aircraft (SMF ¶¶ 41-47); and (5) Plaintiff getting into a verbal altercation with Lead A&P Tech Dave Leadley and Leadley telling him, "Go work on my fucking airplane" (SMF ¶¶ 49-52).

Murray's allegations that Learjet management gave him undesirable or difficult assignments or his grievance that certain supervisors did not recognize his effort on certain tasks are too general and insufficient as a matter of law to create a hostile work environment.  *See, e.g.*, *Booth v. Pasco Cnty., Fla.*, 829 F. Supp. 2d 1180, 1189-90 (M.D. Fla. Oct. 28, 2011) ("Booth's allegations that Bodden improperly disciplined him on isolated occasions, and often yelled at him are merely generalized complaints of constant needling and criticism that are insufficient as a matter of law to create a hostile work environment.").   More importantly, Plaintiff proffers no evidence linking these assignments or management's failure to recognize his work to his race (SMF ¶¶ 32-34, 43, 47).

Likewise, Plaintiff's allegation that management assigned him VFG testing work despite sending two White A&P Techs to Montreal for training is too vague and speculative to constitute

evidence that could be viewed by a reasonable person as "hostile" on account of Plaintiff's race. *See, e.g.*, *Henderson v. Dade Cnty. Police Benev. Ass'n, Inc.*, No. 14-20321-CIV, 2014 WL 3591600, at *8 (S.D. Fla. July 18, 2014) (dismissing discrimination claims where the plaintiff's conclusory assertions that Hispanic males were promoted to the exclusion of African American women were "without factual support as to how each was similarly-situated in all relevant aspects to the Plaintiff" and were, therefore, "insufficient.").

There is also no evidence that Leadley's use of the F-word when responding to Plaintiff's inquiry about a missing entry in the service order was motivated by Murray's race. Indeed, Section 1981 or Title VII do not prohibit all verbal or physical harassment and "is not a general civility code for the American Workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *see also Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 519 (8th Cir. 2010) (finding that the plaintiff offered "little more than speculation and conjecture" that supervisor's "nitpicking and ridicule" had anything to do with race); *Anderson v. Memphis Bd. of Educ.*, 75 F. Supp. 2d 786, 793 (M.D. Tenn. 1999) ("The mere use of foul language, without more, does not automatically create an unreasonably abusive or offensive environment under Title VII."). Plaintiff admitted that he could proffer no facts, other than his own "personal opinion," that Leadley reacted rudely to him because of his race (SMF ¶¶ 50-52).

Furthermore, the isolated actions proffered by Plaintiff are insufficiently severe to state a claim for hostile work environment. Indeed, the Eleventh Circuit rejected hostile work environment claims alleging significantly more serious conduct. *See, e.g.*, *Godoy v. Habersham Cty.*, 211 F. App'x 850, 853-54 (11th Cir. 2006) (affirming summary judgment where, *inter alia*, plaintiff endured racial slurs nearly every day, supervisor battered him, and told him "to go back to his boat and sail to South America where he belongs"); *Barrow v. Ga. Pacific Corp.*, 144 F. App'x 54, 57 (11th Cir. 2005) (affirming summary judgment where plaintiff's supervisor threatened to "kick [his] black ass," co-workers displayed the rebel flag, bathroom had KKK graffiti, a noose was found in a locker, and supervisors called plaintiff "n*gger," "black boy," and "dumb ass."). Here, the opposite is true. Plaintiff admitted he never witnessed or heard anyone refer to him by a racist term, call him a racist name, or use a racist slur around him (SMF ¶ 18).

Plaintiff's constructive discharge claim suffers from even greater shortcomings than his hostile work environment claim. "The threshold for establishing constructive discharge … is

quite high." *Hipp v. Liberty Nat. Life Ins. Co*., 252 F.3d 1208, 1231 (11th Cir. 2001).  "In evaluating constructive discharge claims, [the Court does] not consider the plaintiff's subjective feelings. Instead, [the Court] employ[s] an objective standard." *Id.*  "The standard for proving constructive discharge is higher than the standard for proving a hostile work environment." *Id.* "To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Id*. at 1236.

To establish a constructive discharge, Plaintiff must prove that Learjet rendered his working conditions so *intolerable* that he was *compelled* to quit involuntarily.  *See Bourque v. Powell Elec. Co*., 617 F.2d 61, 65 (5th Cir. 1980).  Before finding a constructive discharge, the Eleventh Circuit has traditionally required a high degree of intolerability.  *Hill v. Winn Dixie Stores, Inc*., 934 F.2d 1518, 1527 (11th Cir. 1991); *see also Mendoza v. Borden, Inc*., 195 F.3d 1238, 1247 (11th Cir. 1999) (*en banc*) (no sex-based hostile work environment where male supervisor (1) told female employee he was "getting fired up;" (2) rubbed his hip against employee's hip while smiling and touching her shoulder; (3) twice made a sniffing sound while looking at employee's groin area; and (4) constantly followed employee and stared at her in a very obvious manner).  Put differently, to find a constructive discharge, a plaintiff's working conditions must have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.  *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987).

Here, the conduct about which Plaintiff complains is insufficient to support a constructive discharge claim.  During his deposition, when questioned extensively about his work experience at Learjet, other than identifying Defendant's previously discussed employment actions (assignment of difficult of undesirable tasks and management not recognizing Plaintiff's efforts at work) and an isolated verbal altercation with a supervisor and speculating that impermissible factors such as race motivated them, Plaintiff did not testify as to any hostile comments by any of his supervisors or co-workers.  *See, e.g.*, *Drake v. Minnesota Mining & Manufacturing Co.*, 134 F.3d 878, 886 (7th Cir. 1998) (more than ordinary discrimination is necessary to establish a constructive discharge claims).

Based on Plaintiff's deposition testimony and Record evidence, no reasonable juror could find, based on the objective standard, that Murray was forced to retire in January 2021, let alone forced to resign at that time because of racially discriminatory conduct.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's Section 1981 hostile work environment/constructive discharge claim.

## CONCLUSION

For the foregoing reasons, Learjet respectfully submits that the Court should grant it summary judgment on all of Plaintiff's claims.

Dated: November 17, 2023.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK
  & STEWART, P.C.
9130 S. Dadeland Blvd., Suite 1625
Miami, Florida 33156
(305) 374-0506
(305) 374-0456 (fax)


*s/ Gregory R. Hawran*
David M. DeMaio
david.demaio@ogletreedeakins.com
Florida Bar No. 886513
Gregory R. Hawran
Florida Bar No. 55989
gregory.hawran@ogletreedeakins.com

*Counsel for Defendant,*
  *Learjet Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 17, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Gregory R. Hawran*
Gregory R. Hawran

**<u>SERVICE LIST</u>**
*Kevin Murray v. Learjet Inc.*
United States District Court, Southern District of Florida
CASE NO.: 0:23-cv-60012-SINGHAL

Colin H.F. Richards, Esq.
 colinrichardslaw@gmail.com
Colin Richards Law, P.A.
900 Osceola Drive, Suite 201
West Palm Beach, FL 33409
Telephone: (786) 286-0076

*Counsel for Plaintiff*

Method of Service:  CM/ECF

David M. DeMaio
 david.demaio@ogletree.com
Gregory R. Hawran
 gregory.hawran@ogletree.com
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
Two Datran Center
9130 S. Dadeland Boulevard
Suite 1625
Miami, Florida 33156
Telephone: (305) 374-0506
Facsimile: (305) 374-0456

*Counsel for Defendant*