UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-60012-CIV-SINGHAL

KEVIN MURRAY,

    Plaintiff,

v.

LEARJET, INC.,

    Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant Learjet Inc.'s Motion for Summary Judgment. (DE [52]). Learjet Inc. ("Learjet") has filed a Statement of Undisputed Material Facts (DE [53]) in support of its motion as required by Local Rule 56.1. None of the material facts offered by Learjet are disputed. *See* (DE [65]).

I.    INTRODUCTION

In this nine-count employment discrimination claim, Plaintiff Kevin Murray ("Murray") alleges he was subjected to disparate treatment and a hostile work environment because of his race (Black) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Florida Civil Rights Act ("FCRA"), and 42 U.S.C. § 1981.[1] He also raises claims under each of those statutes alleging he was retaliated against because he sought to enforce his rights under Title VII.

Murray began his employment with Learjet in 2002 as an Airframe & Powerplant Technician ("A&P Tech") at Learjet's Florida Service Center at the Fort Lauderdale

---

[1] "Claims under Title VII and the FCRA are analyzed under the same framework." *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1300 (11th Cir. 2023). Likewise, the legal elements of claims brought under § 1981 and Title VII are identical. *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985).

Airport. (DE [53] ¶ 6). Murray's Complaint alleges that his skills and experience were stronger than those of his co-workers and his performance throughout his entire career was exceptional. Throughout his 19-year tenure, he never received a negative evaluation from his supervisor. *Id.* ¶ 9. He always received good or very good evaluations. *Id.* ¶ 10. He received many GEM awards ("Going the Extra Mile") from management. *Id.* ¶ 12. A supervisor once told him that if there was a difficult brake problem, he heard that Murray was the guy who could get it done. *Id.* ¶ 25. During his 19-year tenure at Learjet, he never applied for another position. *Id.* ¶ 13. He retired in January 2021. *Id.* ¶ 7.

Plaintiff testified to the incidents he claims showed disparate treatment and harassment: (a) being assigned a difficult task of an engine change (*id.* ¶ 20-21); (b) being assigned a difficult task of fixing a brake problem at the Miami Airport (*id.* ¶ 22-24); being assigned a task of fixing a rudder damper problem (*id.* ¶ 25-27); being assigned to work on fuel tanks and toilets (*id.* ¶ 28-34); being assigned to conduct VFG testing despite other A&P Techs receiving training on VFG in Montreal (*id.* ¶ 35-40); having to fix doors and remove engines on an aircraft and management did not recognize his achievement (*id.* ¶ 41-47); one supervisor used the "F-word" one time (*id.* ¶ 49-53).

According to Murray, the following conduct[2] underlies his retaliation claim: he once called his supervisor a "snake" and in early 2018, he complained that he felt he was underpaid. *Id.* ¶ 83.

In 2019, following an audit by the Department of Labor Office of Federal Contract Compliance Programs ("DOL OFCCP"), Learjet entered into a conciliation agreement. *Id.* ¶ 84. Murray and other minority A&P Techs were given notice and the opportunity to opt

---

[2] The lengthiest statute of limitation on Plaintiff's claims is for the § 1981 claims, which is four years. *Baker v. Birmingham Bd. of Educ.,* 531 F.3d 1336, 1338-39 (11th Cir. 2008). Plaintiff's Complaint span his entire 19-year career at Learjet. Only incidents that fall within the statute limitation will be considered here.

into a settlement relating to unequal pay practices. *Id.* ¶ 85. Murray received a lump-sum payment and tendered a release of all claims related to compensation due to race and ethnicity. *Id*. ¶ 87.

In May 2020, Murray volunteered to be placed on furlough status due to the COVID-19 pandemic. *Id.* ¶ 89-91. Murray was asked to return from furlough in January 2021, but he decided to retire instead. *Id.* ¶¶ 93-95.

II.     LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[3] *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Where a non-moving party fails to respond, "summary judgment may be granted 'if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it[.]' Fed. R. Civ. P. 56(e)(3); *see also Fetchick v. Seminole Cty.*, 719 Fed. Appx. 973, 974 (11th Cir. 2018). Further, "[a]ll material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact

---

[3] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply." S.D. Fla. L.R. 56.1(c).

"[T]he Court cannot grant the motion simply because it was conceded or procedurally defaulted." *Est. of Reed v. Nat'l Specialty Ins. Co.,* 2020 WL 5547922, at *6 (S.D. Fla. July 29, 2020) (citing *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016)). Rather, the court must "conduct an independent evaluation to determine whether the record and any undisputed material facts justify granting summary judgment." *Id.* (quoting *Parker v. U.S. Immigration and Customs Enforcement,* 238 F. Supp. 3d 89, 97 (D.D.C. 2017) (citing Grimes, 794 F.3d at 98-99 (Grimes, J., concurring)).

### III. DISCUSSION

#### A. Disparate Treatment

To state a claim for disparate treatment "a plaintiff must show that: (1) [he] is a member of a protected class; (2) [he] was qualified for the position; (3) [he] suffered an adverse employment action; and (4) [he] was treated less favorably than a similarly-situated individual outside [his] protected class." *Arafat v. Sch. Bd. of Broward Cnty.*, 549 Fed. Appx. 872, 874 (11th Cir. 2013) (citing *Maynard v. Bd. of Regents,* 342 F.3d 1281, 1289 (11th Cir.2003)).

Murray has not established the second prong of this test: that he suffered an adverse employment action. "While not everything that makes an employee unhappy is an actionable adverse action, conduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute adverse action under Title VII." *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002).

Nothing in the record before this Court points to an adverse employment action. To the contrary, Murray never received an adverse employment review and was always

rated "good or very good." (DE [53] ¶ 9-10). Although Murray complains about the nature of a few job assignments, he also acknowledges that his higher level of skill made him the "go-to-guy" for certain tasks. *Id.* ¶ 21-25. Further, he has not shown that only Black A&P Techs were assigned to do "dirty" jobs such as cleaning fuel tanks or toilets. He could not name one non-Black comparator A&P Tech who was not required to work on fuel tanks or toilets. *Id.* ¶ 34.

Likewise, Murray did not establish that his termination was due to racial discrimination. During the COVID-19 slow down, Murray volunteered to be furloughed. *Id.* ¶ 91. He was asked to report back to work but he decided to retire instead of returning to work. *Id.* ¶ 95.

Because Murray has not established an adverse employment action, Learjet is entitled to summary judgment on Counts I, II, and III of the Complaint.

### B. Hostile Work Environment

To prevail on a claim of hostile work environment, Murray 'must establish that [he] suffered unwelcome harassment, that it was based on a protected characteristic, and that it was sufficiently 'severe or pervasive' to alter the terms and conditions of [his] employment and create an abusive working environment." *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1302 (11th Cir. 2023). "The factors to consider are the frequency and severity of the conduct, whether it is physically threatening or humiliating, and to what degree it reasonably interferes with the plaintiff's job performance." *Rojas v. Fla.*, 285 F.3d 1339, 1344 (11th Cir. 2002). The record before the Court does not show the existence of a "severe or pervasive" pattern of harassment.

Likewise, there is no evidence in the record to support Murray's claim of constructive discharge. To establish a constructive discharge, a plaintiff must show that

5

working conditions were "so difficult or unpleasant that a *reasonable* person in the employee's shoes would have felt compelled to resign." *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987) (quotations omitted). The conduct complained of by Plaintiff is not sufficient to support a constructive discharge claim. At best, Plaintiff described isolated incidents and speculation that those incidents were racially motivated. There is no evidence of conditions that were so difficult or unpleasant that a reasonable person would have felt compelled to resign.

For these reasons, Learjet is entitled to summary judgment on Counts IV, V, and VI of the Complaint.

### C. Retaliation

Finally, Plaintiff has failed to establish evidence that would support a claim of retaliation. To state a claim for retaliation, a plaintiff "must allege the following elements: (1) [he] participated in an activity protected by Title VII; (2) [he] suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse action." *Arafat v. Sch. Bd. of Broward Cnty.*, 549 Fed. Appx. 872, 874 (11th Cir. 2013).

Plaintiff testified in his deposition that he believed management retaliated against him when he complained in "early 2018" that he was not adequately compensated as "a minority." According to Plaintiff, he felt that Lead Avionics Tech Jamie Pelchat increased his workload as a result of the complaint, but also acknowledged that he believed Pelchat sent him additional work because she knew he would do the job. (DE [53] ¶ 74-75). Plaintiff has produced no facts that would support his claim that Pelchat started to assign him more work for complaining about his pay.

Plaintiff also states that the lead A&P Tech, Ramon Rios "tried to fire him" but offers no facts from which retaliation can be inferred. Plaintiff resigned from Learjet rather than return to work after the COVID-19 furlough. There is no evidence in the record to support the conclusion that Plaintiff was fired in retaliation for complaining about his pay. Accordingly, Learjet is entitled to summary judgment on Counts VII, VIII, and IX of the Complaint.

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (DE [52]) is **GRANTED.** Pursuant to Fed. R. Civ. P. 58(a), a separate final judgment will be entered. The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 30th day of January 2024.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF